Filed 9/6/23  In re N.S. CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re N.S., a Person Coming Under the Juvenile Court Law. | B316048 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> L.D., <br><br> Defendant and Appellant. | (Los Angeles County Super. Ct. No. 20CCJP00622) |
| In re N.D., a Person Coming Under the Juvenile Court Law. | B324410 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> B.S., <br><br> Defendant and Appellant. | (Los Angeles County Super. Ct. No. 20CCJP00622A) |

APPEAL from an order of the Superior Court of Los Angeles County.  Terry T. Truong, Commissioner.  Conditionally affirmed and remanded with directions.

Konrad S. Lee, under appointment by the Court of Appeal, for Defendant and Appellant L.D.

Emery El Habiby, under appointment by the Court of Appeal, for Defendant and Appellant B.S.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Melania Vartanian, Deputy County Counsel, for Plaintiff and Respondent.

_____

**INTRODUCTION**

In these consolidated appeals, L.D. (Father) and B.S. (Mother) appeal from the juvenile court's order terminating parental rights over their daughter, N.S., under Welfare and Institutions Code[1] section 366.26.  Both parents assert the court and the Los Angeles County Department of Children and Family Services (DCFS) failed to comply with the applicable provisions of the Indian Child Welfare Act of 1978 (ICWA; 25 U.S.C. § 1901 et seq.) and related California law.  DCFS concedes that the initial ICWA inquiry was inadequate as to the paternal side of the family because no inquiry was made of known and available paternal extended family members about N.S.'s possible Indian ancestry.  We further conclude that DCFS must conduct further inquiry as to maternal side of the family, based on the maternal

_____

[1]     Unless otherwise stated, all further statutory references are to the Welfare and Institutions Code.

2

grandfather's Cahuilla tribal membership, to determine whether there is reason to know that N.S. is an Indian child.  We therefore conditionally affirm the order terminating parental rights and remand for full ICWA compliance.

### FACTUAL AND PROCEDURAL BACKGROUND

On January 31, 2020, DCFS filed a section 300 petition on behalf of then one-week-old N.S.[2]  The petition alleged N.S. was at substantial risk of harm based on Mother's use of amphetamine, methamphetamine, and marijuana during her pregnancy, and Father's failure to protect N.S. from Mother's drug abuse.

In the parents' initial interviews with DCFS, Father denied having any Native American ancestry.  He reported that he and Mother resided with the paternal grandmother and Father's three siblings.  Mother informed DCFS that the maternal grandfather was registered with a tribe, and that he intended to register her as well but had not done so.  She did not know the tribal name at that time.

At the February 3, 2020 detention hearing, Father submitted a Parental Notification of Indian Status (ICWA-020) form in which he indicated that he did not have Indian ancestry as far as he knew.  Mother stated in her ICWA-020 form that the maternal grandfather was a member of the "Cahuilla" tribe.  The juvenile court ordered DCFS to gather as much information as possible from Mother and to provide "appropriate notices."

---

[2]  In these consolidated cases, one case is captioned, "In re N.S." and the other is captioned "In re N.D."  N.S. and N.D. are the same child, and for simplicity we refer to the child as N.S.

On March 5, 2020, DCFS interviewed Mother regarding her Indian ancestry. Mother reported that her family were registered members of the "Cahuilla" tribe and provided the maternal grandfather's tribal enrollment number. The following day, DCFS interviewed the maternal grandfather and the maternal great-grandmother. They shared the names of some family members, but had limited information about their family history. DCFS prepared an ICWA notice based on the minimal information provided.

On March 9, 2020, DCFS sent by certified mail Notice of Child Custody Proceeding for Indian Child (ICWA-030) forms to the Bureau of Indian Affairs (BIA), the Secretary of the Interior, and the "Cahuilla Band of Mission Indians." The original notices, however, omitted the maternal grandfather's tribal enrollment number. On March 23, 2020, DCFS corrected this error by sending revised notices, which included the tribal enrollment number. The notices sent to the tribe were mailed to a P.O. box in Temecula, California.

In an interim review report filed on June 26, 2020, DCFS indicated it had received "return to sender" notices from the tribe. DCFS also had received written correspondence from both the BIA and the Department of the Interior, which advised DCFS to send the information provided in the ICWA notice directly to Lisa Mariano of the "Cahuilla Band of Indians" at an address in Anza, California.

On June 23, 2020, DCFS spoke with Mariano about N.S.'s possible Indian status. Mariano confirmed that the maternal grandfather's name "was in the database," though the date of birth provided by DCFS was not the same. While DCFS also provided the maternal grandfather's tribal enrollment number,

4

Mariano stated that such information was not needed at that time to locate him in the database. According to Mariano, in order for a child to be identified as an ICWA child, the child's parent must be enrolled in the tribe without interruption. If a grandparent was enrolled, but not the parent, then the child could not be considered a tribal member until the parent was enrolled and registered. Mother was not currently an enrolled or registered member of the "Cahuilla Band of Indians." After reviewing a copy of the ICWA notice via e-mail, Mariano requested that DCFS send the notice via registered mail, and indicated that she would prepare a written response on behalf of the tribal council. Mariano also stated that, while a child may not be an enrolled tribal member, ICWA applied if there was reason to know that the child was an Indian child.

DCFS resent the ICWA notice to the "Cahuilla Band of Mission Indians" at the address in Anza, California. On August 30, 2020, DCFS again spoke with Mariano, who reported that Mother had not completed any documentation proving that she was eligible to register as a Cahuilla tribal member. As of that date, DCFS still had not received any written correspondence from the tribe.

In a last-minute information for the court report filed on November 16, 2020, DCFS stated that it had received a certified return receipt card from the tribe in response to the ICWA notice, but no other written correspondence. On September 24 and October 29, 2020, DCFS had follow-up calls with Mariano, who confirmed that Mother had not provided any new information or contacted the tribe.

Over the course of the proceedings, DCFS had contact with relatives on the paternal side of N.S.'s family. In January 2020,

5

a social worker visited the paternal grandmother at her home and asked for information on the parents' whereabouts. In June 2020, the social worker spoke with two paternal aunts, L.M. and A.D., to inquire about a possible relative placement for N.S. There is no indication that DCFS asked any of these paternal relatives whether N.S. might be an Indian child.

The jurisdictional and dispositional hearing was held on November 20, 2020. The juvenile court found it had no reason to know that N.S. was an Indian child. The court sustained the petition as pled, declared N.S. a dependent of the court under section 300, subdivision (b), and removed the child from parental custody. The court bypassed reunification services for both parents and set the matter for a section 366.26 hearing.

On October 29, 2021, the juvenile court held the section 366.26 hearing. The court found, by clear and convincing evidence, that N.S. was adoptable and no exception to the termination of parental rights applied. The court terminated parental rights over N.S. and ordered adoption as the child's permanent plan.

Both Mother and Father appeal from the order terminating parental rights.

## DISCUSSION

On appeal, both parents argue, and DCFS concedes, that the juvenile court failed to ensure compliance with ICWA's inquiry provisions as to the paternal side of the family, because DCFS did not inquire of known and available paternal extended family members about N.S.'s possible Indian ancestry. Father also asserts that the juvenile court failed to ensure compliance with ICWA's notice provisions as to the maternal side of the family, because DCFS provided notice to only one of eight

6

federally recognized Cahuilla tribes.  We conclude that a conditional affirmance and remand for full compliance with ICWA is required in this case.

## I.    Governing law

"ICWA reflects a congressional determination to protect American Indian children and to promote the stability and security of Indian tribes and families." (*In re Josiah T.* (2021) 71 Cal.App.5th 388, 401.)  To that end, ICWA mandates that "[i]n any involuntary proceeding in a [s]tate court, where the court knows or has reason to know that an Indian child is involved, the party seeking the foster care placement of, or termination of parental rights to, an Indian child shall notify the parent or Indian custodian and the Indian child's tribe" of the pending proceedings and the right to intervene.  (25 U.S.C. § 1912(a).)  Similarly, California law requires notice to the child's parent, Indian custodian, if any, and the child's tribe if there is "reason to know . . . that an Indian child is involved" in the proceeding. (§ 224.3, subd. (a).)

Both juvenile courts and child protective agencies "have an affirmative and continuing duty to inquire whether a child for whom a petition under Section 300 . . . may be or has been filed, is or may be an Indian child."  (§ 224.2, subd. (a); see *In re Isaiah W.* (2016) 1 Cal.5th 1, 14 ["juvenile court has an affirmative and continuing duty in all dependency proceedings to inquire into a child's Indian status"].)  " 'This continuing duty can be divided into three phases:  the initial duty to inquire, the duty of further inquiry, and the duty to provide formal ICWA notice.' " (*In re Josiah T.*, *supra*, 71 Cal.App.5th at p. 402.)

California law provides that the duty to inquire "begins with the initial contact" (§ 224.2, subd. (a)) and requires the

7

juvenile court and child protective agency to ask all relevant involved individuals whether the child is or may be an Indian child (*id*., subds. (a)–(c)).  At the first appearance of each party, the court must inquire whether that party "knows or has reason to know that the child is an Indian child," and must "instruct the parties to inform the court if they subsequently receive information that provides reason to know the child is an Indian child."  (*Id*., subd. (c).)  Additionally, when the agency takes a child into temporary custody, it must inquire of a nonexclusive group that includes the child, the parents, and extended family members "whether the child is, or may be, an Indian child."  (*Id*., subd. (b)).  Extended family members include adults who are the child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent.  (25 U.S.C. § 1903(2); § 224.1, subd. (c).)

    If the juvenile court or the child protective agency "has reason to believe that an Indian child is involved in a proceeding, but does not have sufficient information to determine that there is reason to know that the child is an Indian child," the court or social worker "shall make further inquiry regarding the possible Indian status of the child . . . as soon as practicable."  (§ 224.2, subd. (e).)  "[R]eason to believe" means the court or social worker has information "suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe."  (*Id*., subd. (e)(1).)  Further inquiry includes, but is not limited to, "[i]nterviewing the parents, Indian custodian, and extended family members," and "[c]ontacting the tribe or tribes and any other person that may reasonably be expected to have information regarding the child's membership, citizenship status, or eligibility."  (*Id*., subd. (e)(2)(A), (C).)

8

"If the [juvenile] court makes a finding that proper and adequate further inquiry and due diligence . . . have been conducted and there is no reason to know whether the child is an Indian child, the court may make a finding that [ICWA] does not apply to the proceedings, subject to reversal based on sufficiency of the evidence." (§ 224.2, subd. (i)(2).) We generally review the juvenile court's ICWA findings under the substantial evidence test, " ' "which requires us to determine if reasonable, credible evidence of solid value supports the court's order." ' " (*In re Josiah T.*, *supra*, 71 Cal.App.5th at p. 401.)

## II.  Remand is required for initial inquiry as to the paternal side of the family

At the November 20, 2020 jurisdictional and dispositional hearing, the juvenile court made an express finding that there was no reason to know that N.S. was an Indian child. As DCFS concedes, however, the evidence was insufficient to support that finding as to the paternal side of the family because the agency failed to fully comply with its initial duty of inquiry.

The record reflects that DCFS had in-person contact with N.S.'s paternal grandmother with whom both parents were residing at the start of the proceedings. DCFS also had contact with two paternal aunts, L.M. and A.D., about a possible relative placement for N.S. There is no indication in the record, however, that DCFS ever asked any of these known and available paternal relatives whether N.S. had any Indian ancestry. In the absence of any evidence that DCFS complied with its duty to inquire of the child's paternal extended family members, as required by section 224.2, subdivision (b), the juvenile court's finding that there was no reason to know that N.S. was an Indian child was not supported by substantial evidence. (See, e.g., *In re Jayden G.*

9

(2023) 88 Cal.App.5th 301, 311 [ICWA error where DCFS failed to inquire of extended family members for whom it had contact information]; *In re J.W.* (2022) 81 Cal.App.5th 384, 389 [ICWA error where DCFS did not ask mother's extended family members about their Indian ancestry, despite having contact with maternal grandmother, uncle, and aunt]; *In re M.M.* (2022) 81 Cal.App.5th 61, 70, review granted Oct. 12, 2022, S276099 [ICWA error where no inquiry was made of extended family members with whom DCFS had contact].)

Appellate courts have adopted several divergent standards for deciding whether an ICWA inquiry error is prejudicial. (See *In re K.H.* (2022) 84 Cal.App.5th 566, 611–618 [describing four approaches for assessing prejudice at the initial inquiry stage and adopting a fifth, injury-focused standard].) In this case, however, we need not decide which standard of prejudice applies. While DCFS initially argued that any ICWA inquiry error was harmless, it later conceded in a letter brief that the case should be remanded for DCFS to conduct a complete initial inquiry, and if required, proceed in accordance with ICWA's notice provisions. In light of this concession, we agree that remand for compliance with ICWA and related California law is the proper remedy here.

## III. Remand is required for further inquiry as to the maternal side of the family

On appeal, Father claims the juvenile court also erred in finding ICWA did not apply as to the maternal side of the family, because the court failed to ensure that DCFS provided notice of the proceedings to all eight federally recognized Cahuilla tribes. DCFS contends it complied with ICWA as to the maternal side of the family because it confirmed the maternal grandfather was in the database of the "Cahuilla Band of Indians," and sent notice to

10

that specific tribe. Because the record is unclear as to whether DCFS contacted all relevant Cahuilla tribes based on the information provided, we conclude that, on remand, DCFS must conduct further inquiry into the maternal grandfather's tribal membership to determine whether there is reason to know that N.S. is an Indian child.

In both her ICWA-020 form and her follow-up interview with DCFS, Mother reported that the maternal grandfather was a registered member of the "Cahuilla" tribe. Mother also provided DCFS with the maternal grandfather's tribal enrollment number. This information was sufficient to require DCFS to conduct further inquiry into N.S.'s Indian ancestry by interviewing extended family members, and by contacting the relevant tribe or tribes regarding the child's membership or eligibility. (§ 224.2, subd. (e)(2)(A), (C).)

At the further inquiry stage, contact with a tribe must, at a minimum, include "telephone, facsimile, or electronic mail contact to each tribe's designated agent for receipt of notices" under ICWA, and "sharing information identified by the tribe as necessary for the tribe to make a membership or eligibility determination." (§ 224.2, subd. (e)(2)(C).) Each year, the BIA publishes a list of federally recognized Indian tribes and their designated agents for receipt of ICWA notices in the Federal Register. (25 C.F.R. § 23.105 (2022).) As of March 2020, there were eight Cahuilla tribes listed: (1) Agua Caliente Band of Cahuilla Indians of the Agua Caliente Indian Reservation; (2) Augustine Band of Cahuilla Indians; (3) Cahuilla Band of Mission Indians; (4) Los Coyotes Band of Cahuilla & Cupeno Indians; (5) Morongo Band of Cahuilla Mission Indians; (6) Ramona Band of Cahuilla; (7) Santa Rosa Band of Cahuilla

11

Indians; and (8) Torres Martinez Desert Cahuilla Indians. (84 Fed.Reg. 20387 et seq. (May 9, 2019).) As of April 2020, the tribe formerly listed as the Cahuilla Band of Mission Indians became listed as the Cahuilla Band of Indians, but the designated agent and address for this tribe remained the same. (85 Fed.Reg. 24022 (Apr. 30, 2020).)

On March 6, 2020, DCFS interviewed the maternal grandfather and the maternal great-grandmother. The record does not disclose what information these individuals provided to DCFS apart from the names of some family members. It is thus unclear whether the maternal grandfather or other relative informed DCFS of the specific Cahuilla tribe in which he was a member. Based on the minimal information that was provided, DCFS prepared an ICWA notice for only one of the eight federally recognized Cahuilla tribes—the Cahuilla Band of Mission Indians (now referred to as the Cahuilla Band of Indians)—but mailed it to a different address than that listed for the tribe in the Federal Register.

At the direction of the BIA and the Department of the Interior, DCFS later contacted Mariano, the designated agent for service of ICWA notices for the Cahuilla Band of Indians. According to a DCFS report, Mariano confirmed in a telephone call with DCFS that the maternal grandfather's name "was in the database." The record is unclear, however, whether this "database" was limited to members of the Cahuilla Band of Indians only, or included members of other Cahuilla tribes. In addition, while Mariano stated that a child was not eligible for membership in the Cahuilla Band of Indians unless the parent was a registered member, the record does not disclose whether other Cahuilla tribes apply these same eligibility criteria.

12

Accordingly, on this record, we cannot ascertain the reason why DCFS contacted the Cahuilla Band of Indians only, and not any of the seven other federally recognized Cahuilla tribes. We also cannot determine whether the inclusion of the maternal grandfather's name in the "database" referenced in the DCFS report means that he was a confirmed member of the Cahuilla Band of Indians, and was not a member of, or eligible for membership in, any other Cahuilla tribe. If, for example, the maternal grandfather identified the Cahuilla Band of Indians as his specific tribe, then there would be a proper basis for the targeted inquiry that DCFS conducted. Additionally, if the Cahuilla Band of Indians confirmed the maternal grandfather was a member of that tribe in particular, then DCFS would not be required to contact the other Cahuilla tribes. Here, however, the record does not adequately demonstrate the basis for DCFS's focused inquiry. For these reasons, we conclude that, on remand, DCFS must conduct further inquiry into N.S.'s possible Indian status, including gathering any additional information that may be necessary to confirm the maternal grandfather's specific tribal membership so that the relevant tribe or tribes may determine whether there is reason to know that N.S. is an Indian child.

## DISPOSITION

The juvenile court's section 366.26 order terminating parental rights over N.S. is conditionally affirmed, and the matter is remanded for compliance with ICWA and related California law. On remand, the juvenile court must promptly direct DCFS to comply with its duty of inquiry in accordance with section 224.2, including interviewing known and available extended family members and contacting the relevant tribe or tribes about N.S.'s possible Indian status. If that information

13

establishes a reason to know that an Indian child is involved, notice must be provided in accordance with ICWA and section 224.3.  DCFS shall thereafter notify the court of its actions and file certified mail return receipts for any ICWA notices that were sent, together with any responses received. The court must determine, on the record, whether the ICWA inquiry and notice requirements have been satisfied and whether N.S. is an Indian child.  If the court determines that N.S. is an Indian child, it must vacate its order and conduct a new section 366.26 hearing, as well as all further proceedings, in accordance with ICWA and related California law.  If not, the court's original section 366.26 order shall remain in effect.


VIRAMONTES, J.

WE CONCUR:


STRATTON, P. J.


GRIMES, J.

14